[Civ. No. 4301. Second Appellate District, Division Two.—October 2, 1923.]

In the Matter of the Estate of JOHN N. PERRY, Deceased. A. H. DIXON, Administrator, etc., Appellant, v. MARY NORMAN, Respondent.

[1] EXECUTORS AND ADMINISTRATORS—COLLECTION OF DEBTS—DUTIES.—An administrator is accountable for the entire estate which he attempts to administer and must collect all the debts, unless after diligence it be shown that collection could not be made.

[2] ID.—COLLECTION OF PROMISSORY NOTES—DILIGENCE.—An administrator who represents two different estates, one of which owns promissory notes found to have been executed by the intestate of the other estate, and who has accessible evidences of identity of the maker of said notes but merely institutes proceedings against one whom he has reason to believe does not exist, letting the statute of limitations run against the claim, cannot be said to have exercised a degree of diligence commensurate with the responsibilities of his trust, but, on the contrary, is at least guilty of gross neglect.

[3] ID.—IDENTITY OF SIGNER OF NOTES—FINDINGS.—In a contest of an administrator's final account, in order that the administrator be charged with responsibility for having failed to use reasonable diligence in collecting promissory notes belonging to the estate, it was unnecessary that the court should have found positively that a certain person signed them; it is enough that the administrator had abundant reason for believing that said person signed them and yet failed to bring suit against him for their collection.

[4] ID.—EVIDENCE—LIABILITY OF ADMINISTRATOR.—An administrator who has reason to believe that a certain person signed promissory notes belonging to the estate, who makes no effort to secure

payment from such person except to present the notes to him and fails to use ordinary care and diligence in the management of the estate regarding the notes and thereby loses to the estate the indebtedness evidenced by said notes, is liable to the estate.

[5] APPEAL—FINDINGS.—A party cannot object for the first time on appeal to defects of form in the findings and will not, therefore, be heard to urge that the findings are not sufficiently explicit.

APPEAL from an order of the Superior Court of Kern County settling administrator's final account. T. N. Harvey, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. A. McGinn, E. L. Foster and Lester R. Godward for Appellant.

Kaye & Siemon and L. E. Nathan for Respondent.

CRAIG, J.—Letters of administration with the will annexed were issued to A. H. Dixon in the matter of the estate of John N. Perry, deceased, and pursuant to the intermediary steps leading up to the filing of said administrator's final account and petition for distribution, which are not included in the record brought here, they were filed on the twelfth day of May, 1922; the respondent filed objections and exceptions thereto, and this appeal is taken by the administrator from the order settling his final account in accordance with said exceptions.

The final account as first presented by the administrator charges him with cash on hand upon settlement of his first account, $353.49, and he asks credit for $330.54, which latter amount included $154.63 as his fee, and the same amount as attorney's fee, besides fifty cents for verification of complaint and $7 paid for filing the same in an action by said administrator against one Matteo Bufrano.

The respondent objected to settlement of such account, alleging that she was the devisee under the will of said decedent, and that appellant had not accounted for two promissory notes for $500 each, due the estate from Matteo Bufrano, as she claimed were shown by the inventory and appraisement and first account of said administrator. The matter was heard by the court, and thereafter it made an

order entitled "Order settling exceptions and objections to final account, and settling final account," and in which it was recited that among other items of property coming into the hands of such administrator were two promissory notes for $500 each, dated May 28, 1914, with interest at seven per cent per annum, payable to John N. Perry, and made by one Matteo Rufrano or Matteo Bufrano; that the first letter in the surname of the signer was indistinct, but the court finds that the signatures were identical with many specimens of Matteo Rufrano's signature found at a savings bank where the latter had done business for several years, and among the papers of decedent, and elsewhere. It is further recited in the order that the court finds that Matteo Rufrano and the decedent had been intimate friends and had worked and lived together, and that no one by the name of Matteo Bufrano was or had been known in that community. The trial court states that it finds from the evidence that the appellant, as such administrator, twice presented said notes to Matteo Rufrano for payment, and upon the latter's denial of execution advised him to obtain counsel for his own protection, but did nothing more; that Matteo Rufrano died subsequently, whereupon appellant became administrator of that estate, and thereafter prepared and filed suit against "Matteo Bufrano" upon said notes, without any knowledge of or belief in the existence of any person by the name of Matteo Bufrano; that he made no inquiry or investigation to learn whether or not said notes had in fact been executed by said Rufrano, and never caused the same to be filed or presented against Rufrano's estate, although the sum of $2,232.06 was distributed to the heirs of Rufrano after paying all claims and expenses of administration; and further, that "the court therefore finds that said A. H. Dixon failed to use ordinary care and diligence in the care and management of said estate of John N. Perry regarding said notes, and that by reason of the neglect, mismanagement, and lack of due care on the part of said Dixon as aforesaid said notes have been lost to this estate, and that the filing of said suit against said Matteo Bufrano was wholly unwarranted."

Neither said inventory and appraisement, the administrator's first account, nor any of the evidence adduced upon the hearing before the trial court, has been furnished us in the

transcript on appeal. No findings of fact nor conclusions of law, except as appear in the order herein mentioned, seem to have been filed. The clerk's certificate merely recites "the foregoing to be true copies of final account, petition for distribution, objections and exceptions to final account and order settling exceptions and objections to final account and settling final account," and the statement that "the foregoing papers, hereto annexed, constitute the judgment-roll in said action," is stricken out, as also is acknowledgment of service of the notice of appeal; a stipulation to the effect that the transcript contains full, true, and correct copies of the original papers on file and of the record in the clerk's office, is not signed by either counsel. As we have said, the court recites in its order that it *finds* the foregoing facts from the evidence, and concludes the same with a charge against the administrator of said two notes, with interest until due, and thereafter compounded, eliminating the credits of $7.50 expended upon filing the suit. Therefore, no question is presented as to the evidence supporting the findings, but only questions of construction of the findings and of their sufficiency to support the judgment rendered.

[1] An administrator is accountable for the entire estate which he attempts to administer (Code Civ. Proc, sec. 1613), and must collect all the debts (Id., sec. 1581), unless after diligence it be shown that collection could not be made (Id., sec. 1615). It seems to us that *Estate of Sanderson,* 74 Cal. 199 [15 Pac. 753], *Estate of Moore,* 96 Cal. 522 [31 Pac. 584], *Elizalde* v. *Murphy,* 4 Cal. App. 114, 117 [87 Pac. 245], *Maddock* v. *Russell,* 109 Cal. 417 [24 Pac. 139], and *Harrington* v. *Keteltas,* 92 N. Y. 40, cited by respondent, are in point. [2] Certainly, one who endeavors to represent conflicting interests, and has accessible evidences of identity of a debtor, but merely institutes proceedings against one whom he has reason to believe does not exist, letting the statute of limitations run against the claim, cannot be said to have exercised a degree of diligence commensurate with the responsibilities of his trust, but, on the contrary, is at least guilty of gross neglect. At all events, the inventory and appraisement, and the administrator's first account, having included the notes in question, they should

have been accounted for in some way in the final account, which apparently ignored them.

In the *Estate of Sanderson*, 74 Cal. 199 [15 Pac. 753], an account was contested upon the ground that the executor had not accounted for an uncollected portion of a note, and complaint was also made therein that the court had failed to find upon the issues. The supreme court said:

"But the transcript contains no bill of exceptions which shows that findings were not waived, *if findings were proper.* There is a bill of exceptions which recites that, when the 'statement on motion for a new trial' was settled, the judge struck out from the proposed statement an allegation, 'On October 3, 1883, counsel for contestants requested counsel for the executor to waive findings of fact, which counsel for the executor declined to do,' and that 'the said matter so struck out recited facts.' The trial of the contest took place April 12th, and the order settling the account was made and entered October 11, 1883. For aught that appears, findings may have been waived at the close of the testimony, or before or after October 3, 1883, and prior to the entry of the decree. The bill of exceptions fails to show distinctly that findings were not waived. . . .

"Every executor is chargeable with the whole of the estate of the decedent which may come into his possession, at the value of the appraisement contained in the inventory. (Code Civ. Proc., sec. 1613.) No executor is accountable for any debts due the decedent, 'if it appears that they remain uncollected without his fault.' (Code Civ. Proc., sec. 1615.) But if it do not so *appear to the court,* the executor must be held answerable for the amount of a debt due the decedent as appraised in the inventory. In the account herein presented, all that appears is, that the executor is debited with a balance of the Braly note uncollected, and that the executor is credited with the same balance; that is, that a portion of the Braly note was not collected. That fact, if taken as true, is not a statement that it remained uncollected 'without fault' on the part of the executor. There is no presumption here as to the executor having done his duty. The presumption is, he could have collected the note in the absence of showing by his own averment, *at least,* that a portion was not collected without any fault in

him." (Italics by supreme court.)    See, also, *Wheeler* v. *Bolton*, 92 Cal. 159 [28 Pac. 558].

[3] It is insisted that the finding that "there is and was abundant reason for believing said notes to have been actually executed by Matteo Rufrano" is insufficient as a finding that Matteo Rufrano signed the notes in question, and that Dixon, the administrator, could not be held in the absence of a finding that Rufrano did sign them. The latter contention is clearly erroneous. In order that the appellant be charged with responsibility for having failed to use reasonable diligence in collecting the notes it was unnecessary to have found positively that Matteo Rufrano signed them. It is enough that the administrator had abundant reason for believing that Rufrano signed them and yet failed to bring suit against him for their collection. [4] If such reason existed, and as elsewhere found by the court, no effort was made to secure payment from Matteo Rufrano except to present the notes to him, and if also, as found, Dixon failed to use ordinary care and diligence in the management of the estate of Perry regarding the notes, and thereby lost to the estate the indebtedness evidenced by them, if these facts are true, the court properly held the administrator liable.

Section 1615 of the Code of Civil Procedure provides: "No executor or administrator is accountable for any debts due to the decedent if it appears that they remain uncollected without his fault." As said by the supreme court in *Estate of Sanderson*, 74 Cal. 199 [15 Pac. 753], there is no presumption here as to the executor having done his duty; the presumption is that he could have collected the note, in the absence of showing by him to the contrary. When it appears to the trial court that a failure to collect was so completely the result of negligence and mismanagement on the part of the administrator as found by the court in the instant case, he is clearly responsible.

The findings of the trial court are possibly susceptible to the construction that Matteo Bufrano was not an existing person and that the note in suit was actually signed by Matteo Rufrano, in which case the administrator would unquestionably be liable; if, on the other hand, the findings be construed as deciding that Bufrano, as well as Rufrano, had any existence, and that the note was signed by either the one or the other, appellant was at fault either in not

proceeding against Rufrano or in not pressing his action against Bufrano to a conclusion.

[5] As to the contention that certain of the findings are not directly and positively stated, without argument, it is sufficient to observe that it has been held that a party cannot object for the first time on appeal to defects of form in the findings, and will not, therefore, be heard to urge that the findings are not sufficiently explicit. (2 Cal. Jur. [Appeal and Error], sec. 91; *Warren* v. *Hopkins*, 110 Cal. 506 [42 Pac. 986]; *Parke* v. *Hinds*, 14 Cal. 415.)

The order of the trial court is therefore affirmed.

Finlayson, P. J., and Works, J., concurred.