TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

----------------------------
:
OPINION                      :
:
of                        :        No. 86-903
:
JOHN K. VAN DE KAMP    :   OCTOBER 22, 1987
  Attorney General         :
:
ANTHONY S. DA VIGO     :
Deputy Attorney General   :
:

-----------------------------------------------------------

THE BOARD OF ADMINISTRATION OF THE CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM has requested an opinion on the following question:

Does the Board of Administration of the Public Employees' Retirement System have authority exclusive of the State Controller to determine what information shall be distributed with warrants to benefit recipients?

CONCLUSION

The Board of Administration of the Public Employees' Retirement System does not have authority exclusive of the State Controller to determine what information shall be distributed with warrants to benefit recipients unless it distributes the warrants directly or contractually reserves such authority.

ANALYSIS

The State Employees' Retirement Fund (the "Fund") is a trust created solely for the benefit of the members and retired members of the Public Employees' Retirement System ("PERS") and their survivors and beneficiaries. (§ 20200.)[1] No retirement funds may be expended for any purpose other than the cost of administration of the system, investments for the benefit of the system, and the provision of benefits to the members and retired members of the system and their survivors and beneficiaries. (§ 20203.3.)

Payments from the Fund to approximately 250,000 PERS retirees and beneficiaries are made upon warrants drawn by the Controller upon demands made by the Board of Administration of PERS ("board"). (§ 20202;[2] and see Cal. Const., art. XVI, § 7; § 12440.) Once drawn, the practice has been for the Controller to mail the warrants directly to the recipient payees. Such authority is contemplated by the statutes governing the powers and duties of the Controller. Section 17002 provides in part:

"<u>Before delivering a warrant to the payee</u>, the Controller shall, upon request, permit the Treasurer to endorse upon or attach to the warrant an order designating the place where it may be paid." (Emphasis added.)

Section 17004 provides:

"Unless otherwise requested, <u>the Controller may mail a warrant</u> to the last known address of the claimant, and the signature of the payee on the warrant is a sufficient receipt." (Emphasis added.)

The Controller's standard operating costs of printing, cutting, folding, inserting, and distributing, including postage, are reimbursed by the board from the Fund. The Controller has on occasion, usually with the prior approval of the board, inserted other materials, including communications from other state agencies, in the envelopes with the warrants to the benefit recipients. The cost of such special services is reimbursed by the agency which contracted for the services. The present inquiry is whether the board has authority exclusive of the Controller to determine what information shall be included with the mailing of warrants.

While the statutes set forth above contemplate the authority of the Controller to mail the warrants, such authority is permissive rather than mandatory. (§ 17004: "the Controller <u>may</u> mail a warrant . . ."; cf. §§ 5 & 14.) Other provisions contemplate the delivery of warrants to the

---

[1] All section references not otherwise identified are to the Government Code.

[2] This is so, even though by the terms of that section the board may retain a bank or trust company to serve as custodian for the Fund.

state agency requesting the payment for distribution to the recipient payees. Thus, section 17051 provides:

> "<u>Whenever any warrant is</u> drawn in favor of a payee having a claim against the state and <u>delivered to a state agency for delivery to a payee</u> . . . ." (Emphasis added.)[3]

Hence, the board may, in conjunction with its demand under section 20202 for the drawing of warrants, direct their deliverance to PERS for distribution, and decline to authorize payment from the Fund to the Controller for the cost of mailing. This proposition is at least consistent with the board's "exclusive control of the administration . . . of the Fund." (§ 20201.) In such a case, there would be no doubt as to the board's exclusive control over the contents of the mailing.[4]

> Where the responsibility for mailing has been transferred to the Controller, however, the specifications as to control and approval of supplemental material must be determined by agreement. In this regard, section 11256 provides in part as follows:

> "Subject to approval of the Director of General Services, state agencies may furnish services, materials or equipment to, perform work for, other state agencies upon such terms and conditions and for such considerations as they may determine and, subject to such approval, may enter into agreements for such purpose."

In the absence of any such provision in the service agreement, the Controller would, in our view, retain the discretion inherent in the express statutory authority to mail the warrants to enclose materials which would be of interest to PERS warrant recipients, provided that any additional cost of including such materials is not charged to the board without its approval. The board may, of course, agree to pay such cost from the Fund, where the interest to the beneficiaries of such material

---

[3]Delivery of warrants by the Controller to state agencies for distribution to state employees is expressly authorized. (§ 18003.)

[4]Reasonably inferred from the general powers of the board (see §§ 20120-20142) is the power to communicate with the system's retirees and beneficiaries on matters related to the system's purposes, subject to appropriate limitations. (Cf. <u>Miller</u> v. <u>Cal. Com. on Status of Women</u> (1984) 151 Cal.App.3d 693, 700; <u>Miller</u> v. <u>Miller</u> (1978) 87 Cal.App.3d 762, 768-769; <u>Stanson</u> v. <u>Mott</u> (1976) 17 Cal.3d 206.) As stated in <u>Miller</u> v. <u>Cal. Com. on Status of Women</u>, <u>supra</u>, at 701:

> "Government has legitimate interests in informing, in educating,and in persuading. If government is to secure cooperation in implementing its programs, if it is to be able to maintain a dialogue with its citizens about their needs and the extent to which government can or should meet those needs, government must be able to communicate."

would justify such expenditure as a "cost of administration" within the meaning of section 20203.3.

It has been said that where the means by which an official duty is to be accomplished is not prescribed, any reasonable means may be used. (Harris v. Gibbins (1896) 14 Cal. 418, 421; 41 Ops.Cal.Atty.Gen. 1, 2 (1963).) What is reasonable must be initially determined by the officer charged with the duty. At a minimum, however, the inclusion with benefit warrants of extraneous material should be based upon a determination that such information falls within the purposes of the requesting agency (cf. Stanson v. Mott, supra, 17 Cal.3d at 213), does not attempt to influence the resolution of issues which our Constitution leaves to the free election of the people (Miller v. Miller, supra, 87 Cal.App.3d at 768), is of legitimate interest to the recipients as retirees and beneficiaries, does not obscure the primary purpose of the mailing, or result in an additional cost to PERS for enclosures submitted by another agency. Other reasonable limitations may be imposed in accordance with the Controller's sound discretion and subject to the board's primary interest in the delivery of its warrants and related information.

It is concluded that the board does not have authority exclusive of the Controller to determine what information shall be included with the mailing of warrants, unless such warrants are distributed by the board itself or such authority is contractually reserved.

\* \* \* \* \*